IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARO BELL** | * | |
| | * | |
| v. | * | Civil Case No. GLR-13-1645 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Charo Bell, who is appearing *pro se,* has not filed a motion for summary judgment. I have considered the Commissioner's pending motion for summary judgment, which Ms. Bell did not oppose.[1] [ECF No. 17]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted.

Ms. Bell filed for Supplemental Security Income on May 13, 2010, alleging a disability onset date of November 28, 2009. (Tr. 136–39). Her claim was denied initially on August 4, 2010, and on reconsideration on February 23, 2011. (Tr. 73–76, 82–83). An Administrative Law Judge ("ALJ") held a hearing on January 25, 2012, at which Ms. Bell was represented by counsel. (Tr. 31–70). The ALJ subsequently wrote an opinion denying benefits to Ms. Bell. (Tr. 10–24). The Appeals Council denied review, (Tr. 1–6), making the ALJ's decision the final,

---

[1] On April 30, 2014, the Court sent Ms. Bell a Rule 12/56 letter advising her of the potential consequences if she did not file an opposition to the Commissioner's motion. [ECF No. 18].

reviewable decision of the agency.

The ALJ found that, during the relevant time frame, Ms. Bell suffered from the severe impairments of fibromyalgia, neuropathy, mild CTS (carpal tunnel syndrome), depression, and obesity. (Tr. 15). Despite these impairments, the ALJ determined that Ms. Bell retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except occasional postural activities, no climbing ladders, ropes, scaffolding, acknowledging her morbid obesity, and limited to simple, unskilled, work not at a production pace meaning paid by the piece or working at an assembly line, frequent but not constant handling, fingering, feeling, can read, write, and do simple math, add, subtract.

(Tr. 20). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Bell could perform, and that she was not therefore disabled. (Tr. 23–24).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). I have also considered the specific challenges to the ALJ's opinion that Ms. Bell raised to the Appeals Council. *See* (Tr. 209–10). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ concluded that Ms. Bell had not engaged in substantial gainful activity since April 8, 2010. (Tr. 15). At step two, the ALJ found that Ms. Bell had the severe impairments described above. *Id.* The ALJ also concluded that Ms. Bell's alleged impairments of mild lumbar degenerative disc disease, headaches, knee pain, and heel spurs were non-severe.

(Tr. 15–16). The ALJ cited to the record exhibits to support her finding that the impairments did not pose any significant functional limitations. (Tr. 16). Ms. Bell argues in her letter to the Appeals Council that her knee and back problems should have been deemed severe impairments. (Tr. 209). She points to X-ray and MRI imaging of her knee and back, which both demonstrated degenerative changes. *Id.* The ALJ discussed the imaging of Ms. Bell's right knee and lumbar spine. (Tr. 16). The ALJ noted that the 2008 MRI of Ms. Bell's lumbar spine showed only "mild degenerative disc disease" and "facet arthropathy with small facet effusions." *Id.* (citing (Tr. 342)). The X-ray of Ms. Bell's right knee was similarly mild, demonstrating only "minor degenerative changes." (Tr. 517). However, even if I were to find that the ALJ erred in her evaluation of Ms. Bell's physical impairments at step two, such error would be harmless. Because Ms. Bell made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Bell's ability to work. *See* 20 C.F.R. § 416.923.

At step three, the ALJ evaluated whether Ms. Bell met the criteria of Listings 1.02, 11.14 (peripheral neuropathies), or 12.04 (affective disorders). (Tr. 17–18). The ALJ described the criteria of each Listing and addressed the medical evidence in conflict with the criteria. With respect to Listings 1.02 and 11.14, the ALJ reasoned that, although Ms. Bell uses a cane, she "got the cane on her own," and that there is no evidence that she is unable to ambulate effectively, or perform fine and gross movements effectively. (Tr. 18). With respect to Listing 12.04, the ALJ used the appropriate special technique to assess whether Ms. Bell met the "paragraph B" or "paragraph C" criteria of that listing. (Tr. 18–20). Citing to the evidence of record, the ALJ found only a mild restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes

of decompensation. (Tr. 20). The detailed analysis provided by the ALJ contains substantial evidence to support her conclusion that the relevant Listings have not been met or equaled.

Following the RFC assessment, the ALJ evaluated Ms. Bell's credibility. Ms. Bell argued to the Appeals Council that the ALJ erroneously commented on her behavior at the hearing, which was conducted via video. (Tr. 210). However, it is apparent from the ALJ's opinion that her observation of Ms. Bell at the hearing was just one component of a larger credibility analysis. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. The ALJ followed that process in this case. The ALJ determined that Ms. Bell's medically determinable impairments could cause the alleged symptoms, but that Ms. Bell's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (Tr. 21-22). The ALJ first discussed Ms. Bell's activities of daily living, which include preparing meals for her children, taking medication, and performing some household chores. (Tr. 21). The ALJ also noted that, while Ms. Bell uses a cane, she had no documented medical necessity for the device. (Tr. 22). The ALJ also discussed her personal observations at the hearing. Namely, that Ms. Bell walked normally into and out of the hearing room, and that she demonstrated normal memory, concentration, and attention. (Tr. 21–22). Social Security regulations expressly allow the ALJ to consider his or her own observations as part of the overall credibility evaluation. *See* 20 C.F.R. § 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *8. The ALJ's credibility evaluation was not limited to her personal observations, and therefore was not erroneous.

Ms. Bell also asserted to the Appeals Council that the ALJ's evaluation of the opinion evidence was erroneous. (Tr. 209–10). Specifically, she argued that the ALJ failed to give controlling weight to the opinion of her psychotherapist, Lisa Pease. *Id.* Ms. Pease is a licensed clinical social worker. As such, she is not considered an "acceptable medical source" and her opinions cannot establish the existence of a medically determinable impairment, nor can her opinions be entitled to controlling weight. *See* 20 C.F.R. § 416.913(a); 20 C.F.R. § 416.927(d); SSR 06-03p, 2006 WL 2329939, at *2. The ALJ may, however, consider the opinions of "other sources," such as Ms. Pease, to determine the severity of an impairment. *See* SSR 06-03p, at *2. Although the ALJ never assigned any specific weight to Ms. Pease's Medical Assessment, and appears to have rejected it outright, I nevertheless find no basis for remand.

The ALJ reasoned that at the time of her written opinion in April, 2012, Ms. Pease's Medical Assessment, prepared in January, 2012, was "current" and could not be extrapolated to Ms. Bell's onset date. (Tr. 19). The ALJ also reasoned that even if she considered Ms. Pease's opinion, there is a lack of evidence demonstrating that Ms. Bell's mental impairments lasted for 12 months. *Id.* I generally agree with the ALJ that Ms. Bell's medical record lacks evidence of mental health treatment other than medication management from her primary care physician. Ms. Bell was never hospitalized for any mental health issues, and while she was scheduled for an evaluation with a psychiatrist in February, 2012, there is no evidence of any prior treatment from a psychiatrist in her medical record. *See* (Tr. 575). I further note that Ms. Pease's opinion conflicts with mental evaluations from state agency medical consultants. Notably, Ms. Pease's assessment of Ms. Bell's ability to adjust socially is at odds with other medical evidence. *Compare* (Tr. 572) (noting "unpredictable behavior and mood swings" resulting in poor to no ability to behave in an emotionally stable manner or to relate predictably in social situations) *with* (Tr. 456) (noting mild depression and anxiety, but intact social judgment and logical

5

thinking); (Tr. 461–64) (finding no significant limitations in social interaction); (Tr. 465–78) (finding only mild difficulties in maintaining social functioning).  I therefore find no grounds for a remand in connection with the ALJ's evaluation of Ms. Pease's medical assessment.

At step five, the ALJ heard testimony from the VE regarding whether Ms. Bell could perform her past relevant work, and determined that she could not. (Tr. 66–67). The ALJ posed a hypothetical to the VE to determine whether a person with Ms. Bell's impairments could perform work existing in significant numbers in the national economy. (Tr. 67–68). The VE testified that the hypothetical claimant could perform the jobs of order clerk, addresser, and taper, printed circuit layout. *Id*. The ALJ inquired whether the VE's testimony was consistent with the DOT and its companion publications, to which the VE responded that it was consistent. (Tr. 68). The ALJ's step five determination, therefore, was supported by substantial evidence.

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 17]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.

Dated:  July 21, 2014                                          /s/
                                                               Stephanie A. Gallagher
                                                               United States Magistrate Judge